## FARMER v. PRITCHARD.
### Patent Appeal No. 2718.

Court of Customs and Patent Appeals.
June 1, 1931.

Otto F. Barthel, of Detroit, Mich., for appellant.

William H. Gross, of Boston, Mass. (Whittemore, Hulbert, Whittemore & Belknap, of Detroit, Mich., of counsel), for appellee.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

BLAND, Associate Judge.

This is an interference case in which Farmer appeals from the decision of the Board of Appeals of the United States Patent Office, affirming the decision of the examiner of interferences, awarding priority of invention to appellee, Pritchard.

The subject-matter of the interference is a measuring valve for lubricating systems to be used on automobiles, printing presses, etc. The valve is designed for use in "one-shot" systems and is so constructed as to permit a definite measured quantity of oil to pass through the valve to the bearing to be lubricated every time the pressure in the lubricating system is raised by any actuating device.

The appeal involves fourteen counts, of which count 1 is regarded as illustrative and follows: "1. The combination with a part to be lubricated and a source of lubricant supply, of a valve including a normally closed lubricant measuring chamber, means operable by the lubricant pressure to open said chamber to the source of lubricant supply, and further operable to close said opening and other means operable by the lubricant pressure to open communication between said chamber and the part to be lubricated."

Pritchard filed his application on October 5, 1925, and Farmer filed the application involved in this interference on February 12, 1926.

Both parties took testimony which shows, that Farmer, in the spring of 1925, brought to the Motor Products Company, where Pritchard was employed as an engineer, an idea for a lubricating system, together with a drawing or drawings of a valve which represented, substantially, the same valve as was later constructed and called valve No. 1, which valve No. 1 is shown in the drawing known as Farmer's Exhibit 9. Farmer went to the Motor Products Company for the purpose of selling or leasing his device. The Motor Products Company took an option for ninety days and paid Farmer the sum of $1,200 for the same. The purpose of the option was to afford opportunity to build and test out the Farmer device. No valves had been built by Farmer up to the time he went to work with Pritchard.

Farmer, during the period of the option,

on June 16, 1925, filed an application for a patent which disclosed the structure of valve No. 1. During the ninety-day period, experiments had been made with the Farmer valve and between seventy-five and one hundred of the same had been built. The testimony differs as to whether the valve was operable, Farmer claiming that there were a number of the valves built that would operate and some that would not. Pritchard claims that none of the valves would operate.

At any rate, other valves were made and tested with the result that valves (2, 2a) similar to those in Pritchard's application were produced. After leaving the Motor Products Company, Farmer constructed valve No. 3, which is the basis of his present application. It is admitted that valves Nos. 2, 2a, and 3 are similar, and it is also admitted that they are operable.

In Farmer's second application, no mention is made of his first application or of the structure disclosed therein.

It is contended here by Farmer that the counts in interference read on his original No. 1 valve and that he, therefore, is the inventor. He also contends that whatever improvements were made upon same, which resulted in later built valves, were his, and if these improvements amount to an invention, that he was the inventor.

The Board of Appeals in its decision refers to the fact that in that tribunal Farmer admitted "that the counts will not read on the valve of his prior application but he contends that this is because of 'some useless limitations and functional clauses' in the counts."

The counts in controversy here, which are taken from Pritchard's application, are quite broad in scope, and we have entertained some doubt as to whether or not they read upon the structure of valve No. 1. However, Farmer's Exhibit 9, which is the drawing of the original Farmer valve, and the drawings in the applications herein involved, show that the structures differ very materially in form, and, we think, in the principle of their operation. At any rate, it is not clear to us that the concurring tribunals erred in holding that the counts involved did not read on valve No. 1.

The fact that Farmer filed a new application for a patent, embodying the new subject-matter of valve No. 3, without in any manner connecting up the first patent application, would seem to indicate that Farmer, himself, regarded the two structures as being different inventions. If they were not, no reason has been pointed out to us why Farmer should not have made his first invention the basis of his Patent Office activities.

In this court Farmer points out that the application of Pritchard was filed before the expiration of the option contract and without his knowledge, and that the purchasing or leasing of his device was later refused by the Motor Products Company, and that all his papers and valves were turned over to him by the Motor Products Company without denying that he was the inventor; that the signing of the contract was postponed from day to day, without any denial that the invention was Farmer's, until he made no further effort to get it signed, and that he then went about trying to sell the latest developed valve and later manufactured the same; that the evidence as a whole shows that Pritchard's concern acted in bad faith with him in taking his idea, permitting him to assist in testing and perfecting the valves and then appropriating to its own use the result of such perfections as were added to Farmer's device.

Regardless of what our conclusions might be as to whether or not there was any bad faith on the part of Pritchard or his company, although it may be an important matter for consideration in weighing evidence and determining the credibility of witnesses, it is sufficient to say that a showing of bad faith cannot supply the necessity for proof of invention. One having an invention to sell, and who proceeds as Farmer did, necessarily runs the risk of meeting with bad faith and later being handicapped in proving the actual facts, owing to the interest of the witnesses.

After eliminating valve No. 1 from consideration, the only question in the case is: Who was the inventor of the valve which is the subject-matter of this interference? Farmer claims he invented it, while Pritchard claims that it was his invention. Three of the Motor Products Company's employees state that in the shop it was known as Pritchard's valve, and that Farmer himself had called it "Bill's valve." They also state that Pritchard first disclosed to them the new valve. Muncy, an engineer employed by the Studebaker Corporation, to whom Pritchard and Farmer talked about the valve, said he understood the later valve was Farmer's invention, but gives no reason for his understanding, except that he never heard Pritchard claim that it was his.

The board summarized the evidence and held that the new valve was the invention of Pritchard; that the case was one of originality; that the relation of employer and employee did not exist; that Pritchard was entitled to priority; and affirmed the decision of the examiner of interferences.

It has not been made clear to us that the concurring findings of the tribunals below are erroneous, and the decision of the Board of Appeals, awarding priority of invention to Pritchard, is affirmed.

Affirmed.